Filed 4/29/22  Williams v. Sonic Automotive CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ANTHONY WILLIAMS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SONIC AUTOMOTIVE, INC. et al.,<br><br>Defendants and Appellants. | A162007<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-20-583846) |

**MEMORANDUM OPINION**[1]

Defendants Sonic Automotive, Inc., FAA Concord H, Inc., and FirstAmerica Automotive, Inc. (collectively, defendants) appeal from a trial court order denying their petition to compel arbitration of a lawsuit filed by plaintiff Anthony Williams.  We affirm.

I.

Williams worked as a salesperson at FAA Concord H, Inc. (Concord Honda), a car dealership, from January to August 2019.  After his employment ended, Williams filed a lawsuit against defendants.  The operative first amended complaint alleged putative class claims for wage and

---

[1] We resolve this case by memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1(2), which urges use of abbreviated opinions in appeals "determined by a controlling decision which does not require a reexamination or restatement of its principles or rules."

1

hour violations and a representative claim under the Private Attorneys General Act of 2004 (Lab. Code § 2698 et seq.; PAGA).

Defendants petitioned to compel arbitration.  They averred Williams signed three arbitration agreements: one in late December 2018 when he applied for a job, a second in early January 2019 after he was hired, and a third in mid-January when he began work.  The language of the agreements varies, but all three agreements contain lengthy, single-spaced paragraphs in small font.  We focus on the third agreement — entitled "Comprehensive Agreement Employment At-Will and Arbitration" (agreement) — as it contains an integration clause.

The agreement is two pages in length and consists of five single-spaced paragraphs in small font.  The arbitration provision, which is in the second paragraph of the agreement, is 45 lines (in the original) and contains 955 words.  It provides in full:

> "I also acknowledge that the Company utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expenses and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my

2

seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration. In order to provide for the efficient and timely adjudication of claims, the arbitrator is prohibited from consolidating the claims of others into one proceeding. This means that an arbitrator will hear only my individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding. Thus, the Company has the right to defeat any attempt by me to file or join other employees in a class, collective, representative, or joint action lawsuit or arbitration (collectively 'class claims'). I and the Company both agree that any challenge to the prohibition against consolidating the claims of others into a single proceeding, whether as a class, a representative action or otherwise, is a gateway issue and shall be determined by the Superior Court; and any substantive claims shall not be decided by the arbitrator until after the gateway determination is made by the Court. I further understand that I will not be disciplined, discharged, or otherwise retaliated against for exercising my rights under Section 7 of the National Labor Relations Act, including but not limited to challenging the limitation on a class, collective, representative, or joint action. I understand and agree that nothing in this agreement shall be construed so as to preclude me from filing any administrative charge with, or from participating in any investigation of a charge conducted by, any government agency such as the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission; however, after I exhaust such administrative process/investigation, I understand and agree that I must pursue any such claims though this binding arbitration procedure. I acknowledge that the Company's business and the nature of my employment in that business affect interstate commerce. I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq.,

including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). However, in addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure Section 631.8. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including, but not limited to, notions of 'just cause') other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise, all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code Section 47(b). As reasonably required to allow full use and benefit of this Agreement's modifications to the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. If CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2. Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3-4) even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration, thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceedings despite the provisions of California Code of Civil Procedure § 1281.2(c).

"I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY."

4

Defendants alleged Williams signed the agreement — which was contained in a "litany of new-hire paperwork" — shortly after he began work, pursuant to "company policy" requiring all employees to participate in alternative dispute resolution. The agreement, defendants argued, was enforceable notwithstanding the fact that it was adhesive, printed in small font, and prohibited Williams from bringing a class or representative action.

In opposition, Williams insisted the agreement was procedurally and substantively unconscionable. Williams offered a supporting declaration indicating he did not recall signing the agreement, that he was "surprised" to learn he had agreed to arbitrate employment-related disputes, and that had he known he would be giving up his right "to file a lawsuit against [d]efendants in court," he would have obtained advice from an attorney, as he did "not have the ability to understand the legal consequences" of the "agreement on [his] own." Williams did not recall receiving the new hire paperwork and alleged that had he received such paperwork, he was not "given the opportunity nor the time to review or negotiate the contents of it. No one . . . reviewed the arbitration agreement" with him.

The trial court denied the petition to compel arbitration. It deemed the agreement procedurally and substantively unconscionable and detailed the reasons: the agreement was adhesive, printed in extremely small font, and filled with opaque language and legal jargon. In addition, the agreement lacked mutuality, contained confusing and contradictory language obscuring the rules and procedures that would govern the arbitration proceeding, and also included language that could be construed to prohibit Williams from bringing a PAGA claim.

The agreement, the trial court observed, was "substantively identical" to the unconscionable arbitration agreements propounded by the car

dealerships in *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111 (*Kho*) and *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662 (*Davis*). The court characterized defendants' attempt to distinguish *Kho* and *Davis* as "groundless" — and verging "on the frivolous" — and noted defendants "and their counsel do not appear to have learned anything from their losses" in those cases. (The car dealerships in *Kho* and *Davis* were represented by the law firm representing defendants.)

II.

We proceed on the basis that there was an agreement to arbitrate. (*Davis*, *supra*, 41 Cal.App.5th at p. 670, fn. 4.) "California law strongly favors arbitration" and "establishes 'a presumption in favor of arbitrability.' [Citation.] An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' " (*Kho*, *supra*, 8 Cal.5th at p. 125.) " ' "[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements." ' " (*Ibid*.) "The burden of proving unconscionability rests upon the party asserting it." (*Id.* at p. 126.)

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. . . . [T]he unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*Kho*, *supra*, 8 Cal.5th at p. 125.)

6

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.]" " 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*Kho*, *supra*, 8 Cal.5th at pp. 125–126.) "On appeal from an order denying a petition to compel arbitration, we review the trial court's factual determinations under the substantial evidence standard, and . . . the legal issues independently." (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 547; *Kho*, at p. 126.)

Guided by *Kho*, *supra*, 8 Cal.5th 111 and *Davis*, *supra*, 41 Cal.App.5th 662 — which concerned arbitration agreements that defendants concede are almost identical to the one at issue here — we conclude the agreement is procedurally and substantively unconscionable.

We begin with procedural unconscionability. It is undisputed the agreement, imposed as a condition of employment, is adhesive. (*Kho*, *supra*, 8 Cal.5th at p. 126.) The circumstances surrounding the formation of the agreement also evince significant oppression. (*Id*. at pp. 126–127 [listing factors].) The economic pressure on Williams to sign the agreement was " 'acute,' " as the record supports an inference that he was not in a position to refuse the job because of the arbitration requirement. (*Id*. at p. 127.) Williams indicated he did not have an opportunity to review the agreement or negotiate its terms, and that no one explained the agreement to him. And the agreement was buried in a mountain of paperwork Williams received shortly after beginning work. The record also reveals surprise: the "agreement is a paragon of prolixity, only slightly more than a page long

7

but written in an extremely small font." (*Id.* at p. 128; *Davis*, *supra*, 41 Cal.App.5th at p. 667.) The text of the agreement "is 'visually impenetrable' and 'challenge[s] the limits of legibility' " and the "substance of the agreement is similarly opaque. The sentences are complex, filled with statutory references and legal jargon." (*Kho,* at p. 128.)[2]

In sum, we conclude the agreement and the circumstances surrounding its execution involve "an 'extraordinarily high' degree of procedural unconscionability." (*Kho*, *supra*, 8 Cal.5th at p. 126; *Davis*, *supra*, 41 Cal.App.5th at p. 671; *Fisher v. MoneyGram Internat., Inc.* (2021) 66 Cal.App.5th 1084, 1090, 1095–1104 [arbitration agreement printed in 6-point font and located in an inconspicuous place demonstrated an "extreme assessment of procedural unconscionability"].)

Next, we turn to substantive unconscionability. As stated above, substantive unconscionability focuses on the fairness of contractual terms. (*Davis*, *supra*, 41 Cal.App.5th at p. 673.) This analysis ensures that contracts, particularly adhesive contracts, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided. (*Id.* at pp. 673–674.) Unconscionable terms " 'may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable

---

[2] Defendants contend the agreement clearly specifies the rules and procedures that would govern the arbitration. We disagree. (See *Davis*, *supra*, 41 Cal.App.5th at p. 675 [agreement's references to " 'CCP § 1284.2' " and " 'Federal Arbitration Act (9 U.S.C. §§ 3–4)' " were "confusing" and had "nothing to do with the rules or procedures that would govern arbitration"].) We conclude the lack of clarity regarding the governing rules and procedures "exacerbated the procedural unconscionability of the [agreement] by adding an element of surprise to the already oppressive circumstances of its formation." (*Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 476–477.)

expectations.' " (*Id.* at p. 674.) When — as here — an agreement displays substantial procedural unconscionability, "a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." (*Kho*, *supra*, 8 Cal.5th at pp. 129–130.)

Defendants maintain the agreement is devoid of *any* degree of substantive unconscionability, but they acknowledge the agreement is almost identical to the agreements deemed substantively unconscionable in *Kho*, *supra*, 8 Cal.5th 111, and *Davis*, *supra*, 41 Cal.App.5th 662. Here, the record contains ample evidence supporting the trial court's findings — both explicit and implied — that the agreement displays elements of substantive unconscionability. (*Nelson v. Dual Diagnosis Treatment Center, Inc.* (Apr. 19, 2022, G059565) __ Cal.App.5th __ [2022 Cal.App. Lexis 325, 17, 23–24].) Defendants do not dispute that the agreement can be read to preclude a "Berman hearing" and related procedures designed to assist in the recovery of unpaid wages. (See *Kho*, at pp. 118, 121–123.) While the waiver of Berman procedures does not, by itself, render an arbitration agreement unconscionable, "the arbitral scheme must offer employees effective means to pursue claims for unpaid wages, and not impose unfair costs or risks on them or erect other barriers to the vindication of their statutory rights. [Citation.] When imposed in a procedurally unconscionable fashion, such barriers to the vindication of rights may become unenforceable." (*Id.* at pp. 133–134.) In *Kho*, our high court held that an arbitration agreement requiring an employee to surrender "the benefits and efficiencies of the Berman process" without gaining "any of the efficiencies or cost savings often associated with arbitration" — when imposed under coercive circumstances — "was sufficiently one sided as to render the agreement unenforceable." (*Id.* at

pp. 133, 136–137.) So too here. We are bound by *Kho*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)[3]

As in *Kho*, we conclude the agreement, made in an "unusually coercive setting," was "sufficiently one-sided as to render the agreement unenforceable." (*Kho, supra*, 8 Cal.5th at pp. 136–137; see also *Davis, supra*, 41 Cal.App.5th at pp. 674–676; *Fisher v. MoneyGram Internat., Inc., supra*, 66 Cal.App.5th at p. 1107.) Having reached this result, we need not determine whether the agreement's PAGA waiver weighs in favor of a finding of substantive unconscionability. We also decline to address defendants' contention that "[s]everance of any unconscionable provisions is appropriate." This argument, which was not raised in the trial court or in defendants' opening brief on appeal, is forfeited. (*Gund v. County of Trinity* (2020) 10 Cal.5th 503, 525.)

## DISPOSITION

The order denying defendants' petition to compel arbitration is affirmed. Williams is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

---

[3] The agreement's "fine-print terms," which are " 'so small as to challenge the limits of legibility' " (*Kho, supra*, 8 Cal.5th at p. 130; *Davis, supra*, 41 Cal.App.5th at p. 671), and the "existence of the three separate agreements to arbitrate" — which "contain several inconsistencies, if not downright contradictions" — also contribute to a finding of substantive unconscionability. (*Davis*, at p. 675.)

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Petrou, J.

A162007